UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSIAH LARKIN, et al.,<br><br>Defendants. | Case No. 15-cr-00010-SI-1<br><br>**ORDER RE: FRANKS HEARING, MOTION TO COMPEL**<br><br>Re: Dkt. Nos. 44, 62 |

Defendant Larkin has moved to suppress evidence gathered as a result of a May 2013 search warrant. Docket No. 44. He also seeks an evidentiary hearing under *Franks v. Delaware* regarding the validity of that same warrant. *Id*. Larkin further moves to compel production of additional discovery related to the individuals whose statements were used in the affidavit to the warrant. Docket No. 62. These motions came on for hearing on August 13, 2015. Having carefully considered the parties' arguments, the Court DENIES the motion to suppress and for a *Franks* hearing. Based on a recently filed protective order, the motion to compel is moot.

**BACKGROUND**

Defendants were indicted on charges of conspiracy to file false claims (18 U.S.C. § 286), filing false claims (18 U.S.C. § 287), and aiding, abetting and causing the subscribing of false tax returns (18 U.S.C. § 2). Docket No. 1. The charges stem from the 2012 tax season, when defendant Larkin owned and operated a tax preparation business in San Francisco. *Id*. ¶¶ 1. His four co-defendants worked for Larkin as tax preparers.[1] *Id*. ¶¶ 2-5.

---

[1] On August 11, 2015, co-defendant Ursula Choice pled guilty to conspiracy to file false claims based on a plea agreement with the government. Docket No. 81.

According to the affidavit of IRS Special Agent Lisa Sasso, defendant Larkin ran a business in San Francisco that held itself out as "Colbert Ball Tax Service." Sasso Aff., Docket No. 45-1, Ex. A ¶ 57. Colbert Ball Tax Service is a company with various franchise locations; however, defendant Larkin's business was apparently unaffiliated with the franchise. *Id*. ¶¶ 54, 57. On tax filings, defendants listed the business as "CB Tax Refunds."[2] *Id*. ¶ 57.

The government alleges that defendants filed false tax returns, claiming an education-related tax credit for clients who did not qualify. As part of the "stimulus package" in 2009, Congress expanded existing education credits to create the American Opportunity Tax Credit. Craig Decl., Docket No. 45-3, Ex. B at 1, Ex. D at 1. This credit was available to students who incurred post-secondary school expenses for items such as tuition, certain school fees, and course materials. *Id*., Ex. D at 1. Up to $1,000 of the credit was "refundable," meaning that a tax filer could potentially receive a $1,000 tax refund under this credit even if the filer did not work or owed no taxes during the tax year. *Id*.

When the 2012 tax season was underway, the IRS became suspicious of Larkin's business and reached out to some of his clients.[3] Sasso Aff. ¶¶ 26-28. The subsequent IRS interviews indicate that CB Tax Refunds had claimed refunds in instances where the client did not qualify for the refund, where the client did not know that a tax refund was being filed, and/or where the client did not know the business was deducting a hefty tax preparation fee. One client, for instance, reported that she heard CB Tax Refunds was "giving away 'free money' for people who had not worked in 2012." *Id*. ¶ 26. The client told the IRS that she thought she was applying for "stimulus" money, not that the business was filing a tax return for her. *Id*. The return filed on her

---

[2] To avoid any confusion with the franchise, defendant Larkin's business will be referred to here as "CB Tax Refunds."

[3] Others of Larkin's clients appear to have contacted the IRS directly or to have contacted the San Francisco Police Department due to concerns about their tax returns. Sasso Aff. ¶¶ 30, 37, 56.

behalf showed that she was eligible for a $981 refund, but CB Tax Refunds informed her she would be receiving $600. *Id.*

Agent Sasso included summaries of nine client interviews in an affidavit filed in support of an application for a search warrant. The affidavit included a description of contact with the San Francisco Police Department regarding CB Tax Refunds. *See id.* ¶¶ 53-54, 56. It also explained that for the 2012 tax year, CB Tax Refunds prepared over 1,000 tax returns, roughly 866 of which claimed the American Opportunity Tax Credit, for a total of $880,722.[4] *Id.* ¶ 50. The IRS later came to believe that among these were 232 returns that falsely claimed the tax credit. *Id.* ¶ 51. Based on the information in the affidavit, on May 7, 2013, Magistrate Judge Spero issued a warrant authorizing a search of Defendant Larkin's place of business and his storage unit, for records related to the 866 clients whose returns claimed the American Opportunity Tax Credit. Craig Decl., Docket No. 45-1, Ex. A at 28; United States' Supplemental Filing, Ex. B, Ex. C (filed under seal). It was as to those records that the magistrate judge found probable cause.

Defendant Larkin now moves to suppress evidence gathered as a result of the search warrant, arguing that Agent Sasso's affidavit contained reckless factual misrepresentations and omissions that were material to the magistrate judge's determination that the warrant was supported by probable cause.[5] Motion to Suppress at 4. Additionally, Larkin seeks a *Franks* hearing. *Id.* at 6. Larkin also moves to compel production of additional discovery that he contends is material to his defense. *Id.*; Docket No. 62.

---

[4] Agent Sasso's affidavit refers to the 866 returns as claiming "the Refundable Hope Educations Credit." The American Opportunity Tax Credit is an expansion of what was previously known as the Hope scholarship credit. Craig Decl., Docket No. 45-3, Ex. D at 1.

[5] Defendant Larkin frames his motion variously as a "motion to exclude" as well as a "motion to suppress." For clarity, the Court refers to the motion as a "motion to suppress."

3

# DISCUSSION

## I. Motion to Suppress and for *Franks* Hearing

### A. Legal Standard under *Franks v. Delaware*

A defendant is entitled to an evidentiary hearing regarding the validity of a search warrant only if he makes "a substantial preliminary showing" that: (1) the affiant intentionally or recklessly included a false statement in the warrant application; and (2) the false statement was material to the issuing judge's determination of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Material omissions can likewise form the basis of a *Franks* hearing. *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985).

A defendant seeking an evidentiary hearing must satisfy five requirements:

> (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; (5) the challenged statements must be necessary to find probable cause.

*United States v. Perdomo*, 800 F.2d 916, 920 (9th Cir. 1986) (quoting *United States v. DiCesare*, 765 F.2d 890, 895 (9th Cir. 1985)). A defendant is not entitled to a *Franks* hearing if, setting aside the alleged misstatements and omissions, "there remains sufficient content in the warrant affidavit to support a finding of probable cause." *Franks*, 438 U.S. at 171-72.

### B. Alleged Omissions or Misstatements

Defendant Larkin argues that Agent Sasso's affidavit hinges on several false premises: (1) that CB Tax Refunds lied to clients regarding the nature of the stimulus tax refund; (2) that CB Tax Refunds filed tax returns without clients knowing that the returns were being filed or without clients knowing that the business was deducting a tax preparation fee; and (3) that other general misstatements paint a picture without which there would not be probable cause. However, none of

these facts taken alone is material to Judge Spero's probable cause finding. Even taken together, if all of the statements to which Larkin objects are omitted or amended, the affidavit provided the magistrate judge with a substantial basis for concluding that probable cause existed. *See Illinois v. Gates*, 462 U.S. 213, 238-39 (1983).

### (1) Misstatements regarding the nature of the "Stimulus" funds

Defendant Larkin claims that the "overarching theme" and the "heart" of Agent Sasso's affidavit is that Larkin's business "lied to clients in telling them that they were applying for 'Stimulus' funds, and instead, they were seeking an education tax credit." Motion to Suppress at 10. Larkin correctly points out that the new tax credit was part of the legislation often referred to simply as the "Stimulus." He appears concerned that the IRS thinks, or asserts, that he misled clients into believing that they were applying for some sort of general government funding unrelated to a tax refund. *See id.*

This issue does not rise to the level of materiality necessary to obtain a hearing under *Franks v. Delaware*. Depending on the context, the affidavit refers at various points to the tax credit and/or to stimulus funds. Sasso initially describes the credit using its formal name, the American Opportunity Tax Credit. *See* Sasso Aff. ¶ 17. Later references to "stimulus" funds are made in the context of client or police recollections and may thus be understood as quoting or paraphrasing the speaker's words. *See, e.g.*, *id*. ¶¶ 32, 59. Moreover, the affidavit indicates that the stimulus funding and tax refund are related, by using such phrases as "student stimulus tax refund" and "filing a tax return in stimulus money." *Id*. ¶¶ 43, 53. That agent Sasso did not explain with each use of the term "stimulus" that this in fact meant a tax credit resulting from the stimulus legislation does not credibly go to the "heart" of the affidavit, as Larkin argues.

Larkin also claims that the affidavit misstates the terms of the tax credit in a manner that is unfavorable to him. Namely, he states that the affidavit wrongly suggests that individuals who do

not earn income or who received grant money for tuition are ineligible for the credit. Motion to Suppress at 11-12. On the face of the affidavit, these assertions are incorrect. The affidavit plainly states that the tax credit is available "even if you owe no tax."[6] Sasso Aff. ¶ 17. The affidavit also explains that the credit applies to "the cost of tuition, *fees, and course materials* paid during the taxable year." *Id*. (emphasis added). The affidavit did not, therefore, represent that the credit applied only to tuition. Since the affidavit accurately described the tax credit, there are no material false statements to correct here.

### (2)   Misstatements regarding clients' knowledge of tax refunds and fees

Defendant Larkin argues that the affidavit on which the search warrant was issued contained false information regarding what his customers knew about the services they received. Motion to Suppress at 13. He asserts that the affidavit, both on its face and based on the information available to the affiant, demonstrates that clients knew that tax returns were being filed for them and that they were paying a tax preparation fee. *Id*. at 14-15.

The affidavit lists three clients who claim not to have known that CB Tax Refunds was filing tax returns, and it is on these three clients' statements that Larkin rests his argument. *See* Sasso Aff. ¶¶ 26, 28, 44; Motion to Suppress at 14. However, the affidavit also names at least four clients who did know they were filing tax returns. *See* Sasso Aff. ¶¶ 27, 31, 37-38, 43. Although Larkin may be correct that the three clients' statements appear internally inconsistent, given that his business had the word "Tax" in its name, he has not made a substantial showing that the clients' confusion was material to Judge Spero's probable cause finding. *See Franks*, 438 U.S. at 155-56.

---

[6] At the hearing, Larkin argued that the affidavit should have specified that the tax was available to those who earned no income during the tax year. The Court does not find this technicality to be material.

Larkin provides little support for his assertion that clients knew they were being charged tax preparation fees. He points to the fact that they received copies of their draft tax returns and that it is "industry practice" for tax preparers to receive the funds directly from the IRS and then issue checks to clients deducting the fee. Motion to Suppress at 15-16. However, the draft returns did not contain information about a preparation fee, nor did they contain information about where the refunds would go. *See, e.g.*, Sasso Aff. ¶¶ 26, 28, 45. In the affidavit, Sasso describes several clients who affirmatively stated they did not know they were being charged tax preparation fees. *Id.* ¶¶ 28, 35, 40. The affidavit reveals that CB Tax Refunds was deducting somewhere in the range of twenty to sixty percent as its fee. *See id.* ¶¶ 26, 28, 34-35, 39, 42-44. Whether or not any of this is "industry practice" does not negate the conclusion, which Sasso reached, that some clients did not know that CB Tax Refunds was charging a fee.

### (3) Other misstatements and cumulative effect of misstatements

Larkin's final argument is that several other items presented in the affidavit materially detract from the probable cause finding. These are: the location of the national headquarters of Colbert Ball Tax Services (presented in the affidavit as based in Sacramento rather than in Houston); and whether Larkin's business had any public licenses or other official documents on site during a police visit. Motion to Suppress at 17-18. Taken alone, neither is material to the probable cause finding.[7]

Larkin argues that, taken as a whole, all of the alleged omissions and misstatements undermine the probable cause finding. *See United State v. Kiser*, 716 F.2d 1268, 1274 (9th Cir. 1983) ("The effect of misrepresentations and omissions on the existence of probable cause is to be considered cumulatively.") (citations omitted). This argument cannot succeed. Even if one

---

[7] With respect to the licensing issue, Larkin acknowledges that this information is not "key" to the probable cause finding. *See* Reply in Support of Motion to Suppress at 15.

removed or amended all of the challenged information, the magistrate judge would still have been left with the following: CB Tax Refunds was falsely affiliating itself with a national franchise; CB Tax Refunds had filed 232 income tax returns without an accompanying Form 1098-T Tuition Statement, leading the IRS to believe all of the returns were false; CB Tax Refunds did not ask some clients whether they had allowable education expenses prior to claiming the tax credit for them; some clients did not realize that the business was charging a tax preparation fee; and the business was withholding tax preparation fees ranging from twenty to sixty percent of clients' returns. *See* Sasso Aff. ¶¶ 26, 28, 34-35, 39-40, 42-44, 51, 57.

Larkin has failed to make a substantial showing that Sasso recklessly made false statements or omissions in the affidavit; nor has he shown that any false statements or omissions were material to the probable cause finding. *See Franks*, 438 U.S. at 155-56. This is not a situation where a warrant issued based on an affidavit citing statements from just one informant, and the defendant produced a declaration from that informant avowing that he never made any of the statements attributed to him in the affidavit. *See United States v. Miller*, 753 F.2d 1475, 1477 (1985) (per curiam); *Kiser*, 716 F.2d at 1270. Larkin's motion to suppress and for a *Franks* hearing is denied.

## II.     Motion to Compel

Defendant Larkin also moved to compel the disclosure of the criminal histories of the nine clients whose statements are summarized in the affidavit supporting the search warrant. The government disputes that the criminal histories of the clients are covered by Federal Rule of Criminal Procedure 16(a), on which Larkin relies. Opposition to Motion to Compel at 2. Nevertheless, at the hearing, the government agreed to produce the criminal histories of the nine clients with a protective order in place. On August 14, 2015, the Court issued a protective order

stipulated to by the parties, for the government to release the criminal histories that Larkin seeks. Accordingly, the motion to compel is moot.

**CONCLUSION**

For the above stated reasons, the Court DENIES defendant's motion to suppress and for a *Franks* hearing.

**IT IS SO ORDERED**.

Dated: August 19, 2015

_____
SUSAN ILLSTON
United States District Judge